Dennis J. SALISBURY

v.

Walter E. STONE et al.

No. 84–66–A.

Supreme Court of Rhode Island.

Dec. 23, 1986.

Edward J. Mulligan, Pawtucket, Vincent C. Fay, Cranston, for plaintiff.

Stephen J. Reid, Jr. (Powers and McAndrew, Inc.), Providence, for defendant.

## OPINION

WEISBERGER, Justice.

This case comes before us on appeal from a summary judgment entered in the Superior Court against the plaintiff in his suit to recover damages from the defendant for the defendant's allegedly unlawful termination of the plaintiff's employment. We affirm. The facts as revealed in the pleadings, the plaintiff's affidavit, and other designated discovery documents are as follows.

On September 9, 1981, plaintiff, Dennis J. Salisbury, filed a complaint in the Superior Court against defendant, Walter E.

Stone, in his capacity as superintendent of the Division of State Police for the State of Rhode Island.[1] In his complaint, Salisbury stated that he had been hired in March 1979 to serve as supervisor of the Rhode Island Law Enforcement Telecommunication Unit, an unclassified civil service position within the Division of State Police. Salisbury further stated that he served as supervisor of the telecommunication unit until Stone dismissed him from that position on July 25, 1980. Asserting that his dismissal was unlawful, Salisbury sought relief under three counts. In count 1 of the complaint, Salisbury claimed that under applicable law and by virtue of implied contract, he possessed a property interest in and a reasonable expectation of entitlement to continued employment and that in dismissing him, Stone violated 42 U.S.C. §§ 1983, 1985(3), 1986, and 1988 (the Civil Rights Act of 1871 as amended), the First and Fourteenth Amendments to the United States Constitution, and the Rhode Island Constitution. In count 2 of the complaint, Salisbury claimed that his employment contract with the state contained an implied covenant of good faith and that in dismissing him in bad faith, Stone breached the employment contract. Finally, in count 3 of the complaint, Salisbury claimed that he was not informed of the reasons for his dismissal or given a pre- or postdismissal hearing and appeal and that in dismissing him in this manner, Stone violated fundamental principles of public policy and thereby tortiously breached Salisbury's employment contract.

Stone filed an answer, admitting Salisbury's dismissal without a hearing but denying Salisbury's claim to a property interest in continued employment as well as his claim of a bad-faith dismissal without just cause or without explanation and opportunity to respond. Ultimately, Stone moved for judgment on the pleadings pursuant to Rule 12(c) of the Superior Court Rules of Civil Procedure, arguing in his memorandum that as an unclassified state employee

1. Salisbury also filed the complaint against Anthony J. Solomon, in his capacity as treasurer of the State of Rhode Island, but on October 7, 1981, the Superior Court dismissed the complaint against Solomon.

serving at the pleasure of his appointing authority, Salisbury failed to state a claim upon which relief could be granted.[2]

Salisbury opposed Stone's motion, arguing in his memorandum that he was a permanent employee with a property interest in continued employment, that in justifying his dismissal for the "good of the service" Stone was required but failed to establish a valid legal cause, and that in dismissing him in bad faith without a hearing and in a manner injurious to his reputation, Stone violated state and federal laws.[3] To support his arguments, Salisbury stated in an affidavit filed with his memorandum that his acceptance of the State Police position was induced by promises of permanent employment for the duration of the telecommunication program. It was his understanding, he further stated, that he could be dismissed only for cause. Maintaining that one month prior to his dismissal his immediate superior praised his work, Salisbury asserted that his dismissal for the "good of the service" was surprising and raised suspicions, provable only now, that nepotism motivated Stone's act. The affidavit also declared that dismissal for the "good of the service" was a stigma that injured his reputation and deterred subsequent employment. According to Salisbury, he was unable to remove this stigma because Stone refused to provide not only him but also his prospective employers with any clarifying reasons for the dismissal. In addition to this affidavit, Salisbury also filed with his memorandum discovery documents, the significance of which for this appeal lay in their descriptions of Salisbury's position as an unclassified state position.

In light of the extraneous documents filed by Salisbury, the trial justice treated Stone's motion for judgment on the pleadings as one for summary judgment pursuant to Rules 12(c) and 56 of the Superior Court Rules of Civil Procedure. Deciding the motion on the basis of the submitted memoranda, the trial justice held that the pleadings, taken together with Salisbury's affidavit and construed in the light most favorable to Salisbury, did not present a genuine issue of material fact. In the absence of a genuine factual dispute, the trial justice further held that Stone was entitled to judgment as a matter of law. Specifically, the trial justice found that since all members of the State Police serve as unclassified employees by statute and since Salisbury, in his complaint, described his position as an unclassified position within the state system, there was no factual dispute regarding Salisbury's status as an unclassified state employee who, as a matter of law, serves at the pleasure of his appointing authority without a cognizable property interest in continued employment. The trial justice also found that since Salisbury's employment contract did not contain a termination date, there was no factual dispute surrounding Salisbury's employment under an indefinite-term contract, which is terminable, as a matter of law, at any time by either party with or without cause. According to the trial justice, even if Salisbury's reputation was harmed by his dismissal, as alleged, such harm did not create a right to continued employment; nor did Stone's positing Salisbury's dismissal upon the "good of the service" require Stone to justify the dismissal with a valid legal cause. Accordingly, the trial justice held that since Salisbury lacked a property interest in continued employment based in state law and did not allege a denial of equal protection of the law motivated by racial or other suspect class discrimination, he failed to state any grounds supporting his state and federal claims for relief.[4]

---

2. Stone also argued that applicable statutes of limitations as well as the qualified immunity he possessed as a state official barred Salisbury's suit.

3. Salisbury also argued that under case law establishing a rationale for extending qualified immunity to government officials, Stone does not possess such immunity.

4. The trial justice also held that since Salisbury failed to allege that Stone violated any of Salisbury's statutory or constitutional rights clearly established and reasonably knowable at the time of the dismissal, Salisbury failed to assert any grounds sufficient to overcome the qualified immunity possessed by Stone as a state official with discretionary authority.

Before this court, Salisbury argues that the trial justice erred not only in finding no factual dispute regarding his employment status but also in finding as a matter of law that he could be terminated without cause, without a hearing, and without clarification to prevent injury to his reputation.

We begin this review of the summary judgment entered against Salisbury by noting that our standards of review are the same standards that govern an initial entry of summary judgment. *Barratt v. Burlingham*, 492 A.2d 1219, 1220 (R.I.1985); *Ardente v. Horan*, 117 R.I. 254, 257, 366 A.2d 162, 164 (1976). Thus, this court will uphold a summary judgment order only when our examination of the pleadings, affidavits, and other discovery materials, in a light most favorable to the opposing party, reveals no genuine issue of material fact and when our review of the relevant law reveals that the moving party is entitled, as a matter of law, to judgment. *Barratt*, 492 A.2d at 1220; *Ardente*, 117 R.I. at 254, 366 A.2d at 164. If the moving party establishes grounds for judgment, the opposing party, who counters that there is a material factual dispute, cannot succeed by merely reasserting the allegations or denials of the pleadings but instead must set forth specific facts that would constitute a genuine issue for resolution at trial. *Nedder v. Rhode Island Hospital Trust National Bank*, 459 A.2d 960, 962 (R.I.1983); *Ardente*, 117 R.I. at 257, 366 A.2d at 164. In setting forth specific grounds to establish a factual dispute, the opposing party must present evidence of a substantial nature predicated on more than mere conclusory statements. *Gallo v. National Nursing Homes, Inc.*, 106 R.I. 485, 489, 261 A.2d 19, 21–22 (1970).

### I

■ Applying these standards of review, we first consider whether Salisbury established the existence of a material factual dispute requiring resolution at trial.

Since state employees are granted by statute termination rights that vary according to their employment within either the classified or the unclassified service system, Salisbury's status within one or the other system is a material fact, over which a genuine dispute would preclude a grant of summary judgment. Salisbury, however, did not dispute that he was employed within the unclassified system. To the contrary, in his complaint, Salisbury described his position as an unclassified civil service position within the Division of State Police. Thus, under the rule that facts admitted in the pleadings are held as true against the pleader, *L.T. Huddon, Inc. v. Swarovski America Ltd.*, 510 A.2d 158, 159 (R.I.1986); *State of Rhode Island v. Piedmont Funding Corp.*, 119 R.I. 695, 699, 382 A.2d 819, 822 (1978), Salisbury effectively removed his status as an unclassified employee from the area of controversy. That there can be no question of Salisbury's status as an unclassified employee is established not only by Salisbury's admission in the pleadings but by statutory authority as well. Under G.L.1956 (1984 Reenactment) § 36–4–2(16) all members of the Division of State Police are employed within the state's unclassified service system.

While failing to dispute his unclassified status, Salisbury contends that his statement alleging the existence of preemployment promises of permanent employment continuing for the duration of the telecommunication project creates a factual issue, resolvable only by a factfinder at trial. In advancing this contention, Salisbury ignores the legal significance of his indisputable status as an unclassified state employee. As we later point out, the alleged preemployment promises, even if presumed to have to been made, cannot, as a matter of law, expand the limits imposed by the Legislature upon the termination rights of unclassified state employees. Since the alleged promises cannot alter the statutory limits of Salisbury's termination rights, any offer to prove their existence fails to constitute a factual issue sufficient to preclude a grant of summary judgment.

### II

■ Since Salisbury failed to establish the existence of a material factual dispute,

we next consider whether Stone is entitled to judgment as a matter of law. Essentially, we must determine whether the termination rights arising out of Salisbury's status as an unclassified state employee are sufficient to support Salisbury's claims for relief. We conclude that they are not.

## A

Construing applicable statutes, this court has previously held that the Legislature intends unclassified state employees to serve at the pleasure of their appointing authority, absent a discriminatory discharge because of race, sex, age, physical handicap, political affiliation, or religious belief. *Lynch v. Gontarz*, 120 R.I. 149, 154–55, 386 A.2d 184, 187 (1978). Thus, although the Legislature has afforded unclassified employees the right of public employment free of certain forms of discrimination, it has not afforded them the right of public employment terminable only for cause. *Id.* Accordingly, as an unclassified employee, Salisbury could be dismissed without cause, as long as the dismissal was not grounded in prohibited discrimination. Since Salisbury failed to allege that his discharge was based upon one or more of the proscribed forms of discrimination, he failed to state a claim of unlawful dismissal.

By alleging unlawful dismissal on grounds other than the proscribed forms of discrimination, Salisbury seeks to modify the above rule governing dismissals of unclassified state employees. Salisbury argues that since Stone justified his dismissal as necessary for the "good of the service," the dismissal is unlawful, unless Stone shows sufficient cause. To support this argument, Salisbury cites *Davis v. Cousineau*, 97 R.I. 85, 196 A.2d 153 (1963), and *Aniello v. Marcello*, 91 R.I. 198, 162 A.2d 270 (1960), for the rule that a dismissal for the "good of the service" is valid only if a legally sufficient cause is shown. Implicit in this argument is the contention that Stone's act of positing Salisbury's dismissal upon the "good of the service," in effect, granted Salisbury a de facto entitlement to continued employment absent sufficient cause for termination. Viewed in this light, Salisbury's argument fails. Stone possesses no power to expand or diminish Salisbury's statutory rights as an unclassified state employee. Since Stone was not required by statute to show cause for Salisbury's termination, his use of the phrase "for the good of the service" was mere surplusage and did not entitle Salisbury to demand a showing of cause. Salisbury's reliance upon *Davis* and *Aniello* for a rule to the contrary is misplaced. In those cases, we reviewed dismissals by appointing authorities who by statute or city charter were empowered to dismiss only "for the good of the service." Within that sharply distinguishable context, we construed the phrase "for the good of the service" as requiring a showing of sufficient legal cause. That statutory requirement was obviously not created simply by Stone's use of the phrase.

Salisbury also argues that his allegations of preemployment promises of continuing employment provide another ground upon which to modify the rule governing dismissals of unclassified state employees. Even if Stone made such promises, the promises would fail to establish an entitlement to continued employment sufficient to support Salisbury's claim of wrongful dismissal. Stone had no authority to make binding promises, the effect of which would restrict the statutory power of an appointing authority to terminate at will an unclassified state employee. *See Ventetuolo v. Burke*, 470 F.Supp. 887, 892 (D.R.I.1978), *aff'd*, 596 F.2d 476 (1st Cir.1979).

Finally, Salisbury urges this court to find that his at-will employment contract contains an implied covenant of good faith dismissal or that tort law imposes a duty upon Stone to dismiss at-will employees only in good faith and in a manner that does not violate public policy. In support of his request, Salisbury cites a number of cases in which courts have used contract and tort theories as well as public policy statements to modify the common-law rule granting an employer power to terminate

without cause an employment contract of indefinite duration. Salisbury erroneously relies upon these cases for a rationale to alter his at-will employment status. Although Rhode Island follows the common-law at-will rule governing indefinite-term contracts, *see Bader v. Alpine Ski Shop, Inc.*, 505 A.2d 1162, 1166 (R.I.1986); *School Committee of Providence v. Board of Regents for Education*, 112 R.I. 288, 291, 308 A.2d 788, 790 (1973), and although Salisbury's employment contract extended for an indefinite term without a designated termination date, Salisbury's at-will status is not predicated upon his employment for an indefinite term. Rather, it is predicated upon his employment as an unclassified state employee. Cases providing a rationale to alter the common-law at-will rule do not provide a valid rationale to alter the at-will employment status established by the Legislature for unclassified state employees. Even though a court may modify or change a rule based upon judge-made common law, *see Ritter v. Narragansett Electric Co.*, 109 R.I. 176, 187, 283 A.2d 255, 261 (1971); *Rampone v. Wanskuck Buildings, Inc.*, 102 R.I. 30, 35, 227 A.2d 586, 589 (1967), it has no power to nullify the legislative will, save in the limited instance of transgressions upon constitutional guarantees not in issue here.

### B

■ Finding that Salisbury failed to state a claim under state law, we turn to a consideration of his federal claims.

Title 42 U.S.C. § 1983 provides a remedy for deprivations, under color of state law, of a right secured by the Constitution and laws of the United States. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924, 102 S.Ct. 2744, 2747, 73 L.Ed.2d 482, 487 (1982). A claimant alleging a deprivation of due process rights must demonstrate that either a property or a liberty interest clearly protected by the due process clause was divested, under color of state law, without procedural safeguards. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548, 556 (1972). In asserting his due process claim under § 1983, Salisbury failed to demonstrate that his interest in continued employment constituted either a property or a liberty interest protected by the due process clause.

An employee's interest in continued employment constitutes a property interest protected by the due process clause only if the interest is grounded in a "legitimate claim of entitlement" arising out of state law. *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709, 33 L.Ed.2d at 561. To establish a legitimate claim, an employee must offer proof of more than a mere "unilateral expectation" of continued employment. *Id.* As a general rule, courts recognize a claim to entitlement if the employee establishes that a statute, rule, or contract grants a right to continued employment, absent a showing of cause. *See, e.g., Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430, 102 S.Ct. 1148, 1155, 71 L.Ed.2d 265, 274 (1982); *Goss v. Lopez*, 419 U.S. 565, 573, 95 S.Ct. 729, 735, 42 L.Ed.2d 725, 733–34 (1975); *Arnett v. Kennedy*, 416 U.S. 134, 151–52, 94 S.Ct. 1633, 1643, 40 L.Ed.2d 15, 32 (1974). On the other hand, courts do not recognize a claim to entitlement if the employee serves at the will and pleasure of the employer. *See, e.g., Bishop v. Wood*, 426 U.S. 341, 344–45, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684, 690 (1976); *Lynch v. Gontarz*, 120 R.I. at 157, 386 A.2d at 188. As an unclassified state employee serving at the pleasure of his appointing authority, Salisbury could not claim, under state law, a legitimate entitlement to continued employment absent cause and, thus, did not possess a property interest requiring procedural due process protections.[5]

An employee's interest in either an unsullied reputation or in prospective employment constitutes a liberty interest protect-

---

**5.** Even though the Legislature's explicit prohibition of class-based discriminatory discharge did afford Salisbury an entitlement to continued employment free of proscribed forms of discrimination, the absence of a cognizable discrimination claim fails to implicate this property interest for due process protection.

ed by the due process clause if a dismissal is accompanied by a charge that might either seriously damage the employee's standing and associations in the community or impose upon the employee a stigma precluding other employment opportunities. *Roth,* 408 U.S. at 573, 92 S.Ct. at 2707, 33 L.Ed.2d at 558–59. Examples of charges that might seriously damage the employee's reputation include charges of dishonesty or immorality. *Id.; see Elias v. Youngken,* 493 A.2d 158, 162 (R.I.1985) (noting that announcement of employee's dismissal, even when supplemented by phrase "for cause," is not defamatory per se or per quod). Even though a forced discharge may mar the employee's attractiveness to prospective employers, the discharge, in and of itself, does not constitute a stigma precluding future opportunities as long as the employee retains the same degree of freedom to seek new employment as was possessed prior to the discharge. *Roth,* 408 U.S. at 575, 92 S.Ct. at 2708, 33 L.Ed.2d at 560. Further, a discharge of a public employee terminable at the will of an appointing authority cannot injure reputation nor interfere with future employment without a public disclosure of the reasons for the discharge. *Bishop,* 426 U.S. at 348, 96 S.Ct. at 2079, 48 L.Ed.2d at 692; *Montaquila v. St. Cyr,* 433 A.2d 206, 212 (R.I.1981). Accordingly, in the absence of a public disclosure of serious charges, such as dishonesty or immorality, Salisbury can not assert that the manner of his discharge injured his reputation or interfered with future employment and, thus, threatened a cognizable liberty interest requiring procedural due process protections.

Turning to Salisbury's claim under title 42 U.S.C. § 1985(3), we find that it also fails. Unlike § 1983, which provides a remedy for deprivations of any constitutional right, § 1985(3) provides a remedy exclusively for deprivations of the equal protection of the law or of the privileges and immunities guaranteed under the law. *Jennings v. Shuman,* 567 F.2d 1213, 1221 (3d Cir.1977). To state a claim under § 1985(3), a claimant must allege that a conspiracy was not only established to deprive the claimant of the equal protection and privileges or immunities of the law but also was predicated upon a racial or suspect class-based, invidiously discriminatory animus. *United Brotherhood of Carpenters & Joiners of America v. Scott,* 463 U.S. 825, 828–29, 103 S.Ct. 3352, 3355–56, 77 L.Ed.2d 1049, 1054 (1983); *Griffin v. Breckenridge,* 403 U.S. 88, 101–03, 91 S.Ct. 1790, 1798–99, 29 L.Ed.2d 338, 348 (1971). In failing to allege that his dismissal was the act of a conspiracy motivated by a racial or class-based animus, Salisbury failed to state a claim under § 1985(3). Since 42 U.S.C. § 1986 correlates with § 1985 and provides a claimant with a cause of action against any person who is aware that a violation of § 1985 is about to occur and possesses the power to prevent its occurrence but nevertheless fails to thwart the impending violation, *D'Amato v. Wisconsin Gas, Co.,* 760 F.2d 1474, 1485 n. 16 (7th Cir.1985); *Rogin v. Bensalem Township,* 616 F.2d 680, 696 (3d Cir.1980), Salisbury's claim under § 1986 falls with our dismissal of his § 1985 claim. Similarly, since 42 U.S.C. § 1988 provides an award of "reasonable attorney's fee as part of costs" to the prevailing party in a civil rights action, Salisbury's § 1988 claim falls with our dismissal of his § 1983, § 1985(3), and § 1986 claims.[6]

For the reasons stated, Salisbury's appeal from the trial justice's grant of summary judgment is denied and dismissed. The judgment appealed from is affirmed. The papers in the case may be remanded to the Superior Court.

**6.** Our finding that Salisbury failed to state a claim for relief under the Civil Rights Act disposes of any need to consider whether Stone, as a state official with discretionary authority, possesses, under the circumstances, qualified immunity from a civil rights suit.