[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
This matter is before the Court on the petitioner's appeal of a decision by the Personnel Appeal Board (hereinafter the "Board"). The petitioner, Edward A. Cotugno, Jr., filed this appeal alleging that his employment with the State of Rhode Island as Executive Director of the Rhode Island Emergency Management Agency (hereinafter "RIEMA" or the "Agency"), was wrongfully severed and terminated effective August 3, 1991. The State of Rhode Island, RIEMA and the Board oppose this appeal. Jurisdiction is pursuant to R.I.G.L. 1956 (1988 Reenactment) §42-35-15.
FACTS/TRAVEL
In 1973, the General Assembly enacted the Rhode Island Defense Civil Preparedness Act (hereinafter the "Act"). R.I.G.L. 1956 (1982 Reenactment) § 30-15-1 et seq. The Act established the Defense Civil Preparedness Agency, a predecessor to the Emergency Management Agency (RIEMA). R.I.G.L. 1956 (1982 Reenactment) § 30-15-5.
RIEMA was established to coordinate and manage "disaster" preparedness, prevention, response and recovery. G.L. § 30-15-3. The Act further provided for a directorship whose office was to be subject to the Governor's appointment, direction and control. Section 30-15-5 provides:
 30-15-5. Defense civil preparedness agency created — Personnel — Facilities. — There is hereby created within the executive department, the Rhode Island defense civil preparedness agency (hereinafter in this chapter called the "agency"), to be headed by a director (hereinafter in this chapter called the "director") who shall be appointed by and serve at the pleasure of, the governor, and who shall be in the unclassified service.
 The director may employ such technical, clerical, stenographic and other personnel all of whom shall be in the classified service and may make such expenditures within the appropriation therefor, or from other funds made available for the purposes of this chapter, as may be necessary to carry out the purposes of this chapter, consistent with other applicable provisions of law.
 The agency may provide itself with appropriate office space, furniture, equipment, supplies, stationery and printing. The director, subject to the direction and control of the governor, shall be the executive head of the agency, and shall be responsible to the governor for carrying out the program for disaster preparedness of this state. He shall coordinate the activities of all organizations for disasters within the state, and shall maintain liaison with and cooperate with disaster agencies and organizations of other states and of the federal government. He shall have such additional authority, duties, and responsibilities authorized by this chapter as may be prescribed by the governor.
The duties of the director, who is in the unclassified service, are to:
 (1) be the executive head of the Agency; (2) be responsible to the Governor for carrying out the State's program for disaster preparedness; (3) coordinate the activities of all organizations for disaster within the State; and (4) maintain a liaison with, and cooperate with, disaster agencies and organizations of other states and the federal government.
In June of 1982, then Governor Garrahy issued Executive Order No. 82-5 which integrated RIEMA within the Rhode Island Army National Guard under the auspices of the Adjutant General for administrative, operational and budgetary purposes. See
Findings of Fact at pp. 3-4, citing Executive Order No. 82-5 dated June 30, 1982.
For reasons not developed in the hearings, in March of 1984, a classified, uncoded position entitled "Executive Director" of the Agency was administratively established by the State. Tr. at p. 11 (September 26, 1991). "Uncoded" means that no public hearing had yet been held for that position. Id. at p. 32. In connection with this action, the "Director" of the Agency was designated as the Adjutant General of the National Guard. The original Director, Santo Amato, filled the newly classified, uncoded position of Executive Director. See Appellant's Exhibit No. 2. In connection with this action, the "Director" of the Agency was designated as the Adjutant General of the National Guard. Santo Amato held the position of Executive Director until retiring on September 9, 1986. Tr. at p. 27 (September 26, 1991).
The position of Executive Director was subsequently filled by Joseph D'Marco and during his tenure, in June of 1988, the position went to public hearing and was established as a coded, classified position. Appellant's Exhibits 9 A, B and C. As of July 28, 1989, that position was vacant. Tr. at p. 12 (September 26, 1991). The petitioner in this case, Edward A. Cotugno, responding to an advertisement for the position of Executive Director of RIEMA submitted an application and, following an interview, was hired on March 11, 1990. Tr. at pps. 2-10 (October 18, 1991).
Upon taking office in January of 1991, Governor Sundlun's administration elected to pursue an administrative and fiscal policy which involved substantial reorganization of the executive branch of state government. See Findings of Fact at p. 7, citing Executive Order No. 91-27 dated August 2, 1992. This reorganization involved grouping those agencies and sub-organizations responsible for emergency preparedness, response and recovery within a public affairs branch. Id.
Pursuant to this reorganization the administration sought to appoint an individual of its choice as head of the Agency. Tr. at pp. 3-7 (November 19, 1991).
However, in reviewing this matter, the administration found that the administrative creation of the position of "Executive Director" of the Agency was inconsistent with the Act, because the position had improperly been placed in the classified service. Id. Therefore, a reorganization of the Agency was instituted to bring the position of Executive Director into compliance with the Act. Id. The Sundlun administration to ensure compliance with the Act, took three necessary steps: (1) it issued Executive Order No. 91-20, (2) it abolished the classified position of Executive Director of RIEMA, and (3) it appointed a director to RIEMA to serve in the unclassified service at the pleasure of the governor in compliance with §30-15-1 et seq. (See Finding of Fact at pp. 7-8, citing Executive Order 91-20 dated July 1, 1991.) Executive Order No. 91-20 directed that Executive Order No. 82-5 be rescinded, that the Adjutant General be relieved of administrative duties, and that the former chain of command with RIEMA directly reporting to the Governor for all purposes be reestablished. Id.
On July 30, 1991, Cotugno was terminated from state service, and Joseph Carnevale was appointed to serve at the pleasure of the Governor. Tr. at p. 13 (November 19, 1991). Upon Cotugno's termination, administrative steps were begun to abolish the improperly classified position of "Executive Director." A public hearing was held pursuant to the merit system law on October 9, 1991, and the position was abolished on or about October 18, 1991, effective December 22, 1991. See Public Hearing Notice #178; Classification Notice 201.
The petitioner filed an action in the United States District Court for the District of Rhode Island on or about August 23, 1991 alleging that a violation of his constitutional rights had occurred. Cotugno v. State of Rhode Island, et al, C.A. No. 91-0443/p. On September 20, 1991, a Consent Order was entered, whereby the federal court action was held in abeyance allowing Cotugno to file an appeal with the Board. Pursuant to that Consent Order, Cotugno filed an appeal with the Board and hearings were held on September 26, October 18, October 24, and November 19 of 1991.
On June 16, 1992, the Board entered the decision dismissing Cotugno's appeal. The Board concluded that the job performed by Cotugno was that of the statutory director of the Agency, that the attempted classification of the position in 1984 was void as a matter of law, and, therefore Cotugno was subject to removal at the pleasure of the Governor. Id. at p. 14. The petitioner appeals from that decision pursuant to § 42-35-15.
This Court is granted jurisdiction to review a decision of the Personnel Appeal Board pursuant to G.L. 1956 (1988 Reenactment) § 42-35-15. This statute also mandates the scope of review permitted by this court.
Section 42-35-15(g) provides:
 42-35-15. Judicial review of contested cases.
 (g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions; (2) In excess of the statutory authority of the agency; (3) Made upon unlawful procedure; (4) Affected by other error of law; (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
Section 42-35-15 precludes a reviewing court from substituting its judgment for that of the agency in regard to the credibility of the witnesses or the weight of the evidence concerning question of fact. Costa v. Registry of MotionVehicles, 543 A.2d 1307, 1309 (R.I. 1988). Under this section, a reviewing court must uphold an agency decision if there is any legally competent evidence in the record supporting the decision.Blue Cross Blue Shield v. Caldarone, 520 A.2d 969, 972 (R.I. 1987).
An Administrative decision can be vacated by this court if it is clearly erroneous in view of the reliable, probative and substantial evidence contained in the entire record. Costa v.Registry of Motor Vehicles at 1309. This Court must reverse those factual conclusions only when they are completely devoid of any competent evidentiary support. Sartor v. Coastal ResourcesManagement Council, 542 A.2d 1077 (1988).
The petitioner, in a series of interrelated arguments, contends that the Board clearly failed in its duty as prescribed in section 42-35-15 and asserts that not only were the conclusions of the Board clearly erroneous but that the process of review itself was made upon unlawful procedure and constituted an abuse of discretion in clear violation of § 42-35-15(g). See
Appellant's Brief. Since the Board refused to allow counsel for the appellant to make inquiry into whether or not appellant was the statutory director of RIEMA, Mr. Cotugno submits that its decision that appellant was indeed the statutory director of RIEMA is violative of § 42-35-15(g). Id. The Board's review of this matter, the petitioner contends, violated his constitutional rights under due process and resulted in an improper termination of his position with RIEMA. The position held by Mr. Cotugno, he concludes, was classified and not subject to termination and as a result the decision of the Board must be reversed, modified or remanded. Id. at p. 23.
The petitioner's conclusions, however, are not supported by the certified record as reviewed and considered by the Personnel Board and preserved for this Court. The Board had before it ample evidence to support its findings. The factual conclusions of administrative agencies shall be reversed only when they are completely bereft of competent evidentiary support in the record.Santo v. Coastal Resources Management Council, 542 A.2d at 1082-83; see also Handman v. Personnel Appeal Board,100 R.I. 145, 152 (1965); Fox v. Personnel Appeal Board, 99 R.I. 566, 571 (1963). In the instant matter, the factual conclusions of the Board are supported by substantial evidence as indicated in the lengthy facts summarized in this decision and contained in the record which this Court has carefully scrutinized.
Mr. Cotugno's contentions are not supported by the record and actually conflict with the bulk of the evidence presented. The Board found that the record establishes Mr. Cotugno, as Executive Director of R.I.E.M.A., was responsible for those duties established by § 30-15-5. Both the official job description and the personnel records entered into evidence corroborate this conclusion. See Appellant's Exhibit 9C; Respondent's Exhibit Nos. 1 and 2. Great deference must be afforded to a hearing officer's findings. See Environmental Scientific Corporation v. Durfee,621 A.2d 200 (R.I. 1993).
Substantial evidence, including Mr. Cotugno's own testimony, clearly show that the petitioner performed or undertook those duties delineated in § 30-15-5 for the director of the Agency. Cotugno's testimony established that the range of the Executives Director's duties included carrying out the State's program for disaster preparedness and coordinating the activities of local emergency agencies. Under examination by his counsel, the petitioner outlined his mode of response in emergency situations as well as his rule in maintaining liaison with the local EMA's.See A, Findings of Fact at pp. 9, 10. Additional evidence combined with Cotugno's testimony establishes that the petitioner, as Executive Director, maintained a liaison with the federal government. Id. at p. 11. Submitted correspondence provides evidence that Mr. Cotugno as Executive Director, like those who served before him, had always been an ex-officio member of the Defense Civil Preparedness Advisory Council. Id.; see R.I.G.L. 1956 (1984 Reenactment) § 30-15-6.
The record demonstrates with sufficient evidentiary support that the position of Executive Director of the Agency is in fact the directorship as established in § 30-15-5. Mr. Cotugno served as Executive Director of the Agency. Under § 30-15-5 that position was statutorily unclassified and served at the pleasure of the governor. Any subsequent reclassification of that position, in this instance Executive Order No. 82-5, could not, the Board concluded, override a statutory exemption from classification. The petitioner's belief that the directorship in which he served was distinct from that described in § 30-15-5
lacks evidentiary support of record.
Mr. Cotugno's further argument that any subsequent administrative decision changed his status is not supported by the evidence in the record. Administrative action of any administrative entity classifying a position can not override a statutory exemption from classification. See 91-11-30 Op. Att'y Gen. (1991). Any administrative classification of a position therefore is void as a matter of law because it is contrary to the statute. Id. It is well established that regulations inconsistent with a statute or contrary to manifest purposes of a legislative body in enacting the statute must be set aside as contrary to law. Cheshire Hospital v. New Hampshire-VermontHospitalization Service, 689 F.2d 1112, 1118 (1st Cir. 1982). Further, in Salisbury v. Stone, 518 A.2d 1355 (R.I. 1986), the Rhode Island Supreme Court held that a state official could not make a preemployment promise restricting the statutory power of an appointing authority to terminate at will an unclassified state employee. Id. at 1359. In other words a state official may not expand the rights of a state employee by statute. Attorney General's Opinion No. 91-11-30.
The Board concluded that the Cotugno matter presented a situation virtually identical to that addressed in the Attorney General's opinion. Findings of Fact p. 13. That conclusion is supported by substantial evidence. The administrative action taken in March of 1984 to change the director's position, is void because it is clearly inconsistent with § 30-15-5. As a matter of law, the person who fits within the definition of the Director of the Agency under § 30-15-5 is in the unclassified services and serves at the pleasure of the Governor.
After review, this court finds that the Personnel Appeal Board's determination regarding the propriety of the termination of Mr. Cotugno is supported by substantial evidence of record.
For the reasons hereinabove set out, the decision of the Personnel Appeal Board of the State of Rhode Island dated June 16, 1992 is affirmed and Mr. Cotugno's appeal is denied.
Counsel shall submit an order for entry within 2 weeks.