**Pamela A. RIEL et al.**

v.

**HARLEYSVILLE WORCESTER INSURANCE COMPANY et al.**

No. 2011–63–Appeal.

Supreme Court of Rhode Island.

June 22, 2012.

Henry H. Katz, Esq., Pawtucket, for Plaintiffs.

Paul S. Callaghan, Esq., Providence, for Defendant Harleysville.

James T. McCormick, Esq., Providence, for Defendant Cormack.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

## OPINION

Chief Justice SUTTELL, for the Court.

In this case, we are asked to decide whether Robert Daniel George (decedent), who was struck and killed by an uninsured motorist[1] in 2006, qualified as an insured under an insurance policy provided by Harleysville Worcester Insurance Company (Harleysville), which policy was procured by The Cormack–Routhier Agency, Inc. (Cormack). The plaintiffs, Pamela A. Riel and Glenn N. George, as co-administrators of the decedent's estate, and Pamela A. Riel, on behalf of her and the decedent's minor daughter, Kara George, brought a complaint against Harleysville and Cormack, the defendants in this case, for declaratory and other relief, but a Superior Court justice granted summary judgment in favor of the defendants. The plaintiffs now appeal, arguing that the trial justice erred in dismissing their claims against Harleysville because a genuine issue of material fact exists with respect to whether the decedent should be considered a named insured under the Harleysville policy. The plaintiffs further assert that the trial justice erred in dismissing their claims against Cormack because, even if they failed to establish that the decedent was a named insured, they still are entitled to pursue their claims against Cormack for failing to procure adequate coverage. This case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After considering the parties' written and oral submissions and reviewing the record, we conclude that cause has not been shown and that this case may be decided without further briefing or argument. For the reasons set forth in this

---

1. The record in this case is inconsistent with respect to whether there was applicable or adequate insurance.

opinion, we affirm the judgment of the Superior Court.

# I

## Facts and Procedural History

### A

### The Accident and its Surrounding Circumstances

The tragic facts underlying this case are not in dispute. In the early morning of March 18, 2006, Robert George was struck by a motor vehicle driven by an uninsured motorist. In the hours leading up to the accident, decedent and several of his friends had visited the "White Horse Sports Bar" in the Town of Glocester. The decedent had been driven to the bar by his friend Jason Gagnon. At approximately one o'clock in the morning, the group of friends returned to decedent's residence, which was located on Putnam Pike[2] in Glocester. Upon exiting Mr. Gagnon's vehicle, decedent and one of his friends walked into the breakdown lane of Putnam Pike and engaged in a conversation with another group of people. While decedent was standing there, an automobile "crossed over the solid, double-yellow centerline," struck decedent and four other pedestrians, and then fled the scene of the accident.[3] The decedent died as a result of his injuries.

At the time of his death, decedent was the sole shareholder and employee of Allied Caulking, Inc. (Allied), a Rhode Island business corporation. In 2005, Michael DelSesto,[4] who knew decedent on a professional basis, had lent a van to decedent "[i]n an effort to help [him] with his business." Mr. DelSesto "also allowed [decedent] to advertise his business on the side of the van, with magnetic signs," and decedent "had the use of said van * * * through and including the day of his death." It is undisputed that decedent had not used or occupied the van in the hours leading up to the accident on March 18, 2006, and that he was not exiting, entering, or in proximity of the van at that time.[5]

### B

### The Policy

Central to the issue in this case is a commercial automobile policy issued by Harleysville in November 2005, which, in its "[d]eclarations," identified Allied as the "[n]amed [i]nsured" and listed decedent as the only operator under the "SCHEDULE OF OPERATORS."[6] The policy's term ran from October 4, 2005, to October 4, 2006. It had an annual premium of $215 and a $1 million limit. All parties agree that the policy did not include a provision for uninsured or underinsured motorist coverage (UM coverage). A declarations page of the policy stated as follows: "In return for the payment of the premium and subject to all the terms of this policy, we agree to provide the insurance as stated in this policy."

---

2. "Putnam Pike" and "Route 44" are used interchangeably in the record to refer to the same highway. For the sake of consistency, we refer to the highway as "Putnam Pike."

3. The automobile later was located in the Town of North Smithfield, and its driver was apprehended and charged with various crimes.

4. Mr. DelSesto's name also is spelled "Del Sesto" in the record. For consistency's sake, we use the former spelling only.

5. The record indicates that during the events in question, the van was parked in decedent's garage.

6. This policy originally was issued in 2004 and then renewed for a second annual term in 2005.

The Harleysville policy covered only "[h]ired '[a]utos'" and "[n]onowned '[a]utos.'" Hired autos were defined as "[o]nly those 'autos' you lease, hire, rent or borrow. This does not include any 'auto' you lease, hire, rent, or borrow from any of your 'employees', partners (if you are a partnership), members (if you are a limited liability company) or members of their households." The policy defined nonowned autos as follows:

> "[o]nly those 'autos' you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes 'autos' owned by your 'employees', partners (if you are a partnership), members (if you are a limited liability company), or members of their households but only while used in your business or your personal affairs."

The Harleysville policy also defined "insureds," in pertinent part, as "[y]ou for any covered 'auto'" and "[a]nyone else while using with your permission a covered 'auto' you own, hire or borrow."[7] The policy explained that "the words 'you' and 'your' refer to the [n]amed [i]nsured."

## C

### The Civil Action

Two-and-a-half years after decedent's death, on September 9, 2008, plaintiffs filed a complaint against defendants for declaratory and other relief, which complaint was amended on September 29, 2008. In their amended complaint, plaintiffs stated that in October 2004, decedent retained Cormack to procure insurance for a motor vehicle that "he was operating for personal use and the business purposes of Allied." The amended complaint further alleged that Cormack, in turn, "procured a motor vehicle liability insurance policy * * * from Harleysville providing one million ($1,000,000) dollars of liability coverage, and caused the [p]olicy to be issued to Allied." The plaintiffs asserted that, despite this policy, Harleysville has refused to pay damages resulting from decedent's death on the ground that he was not entitled to UM coverage.[8]

The plaintiffs, in their amended complaint, first asked for a judgment declaring that, at the time of decedent's death, the Harleysville policy provided UM coverage, "as required by [G.L.1956] § 27–7–2.1, in the amount of one million ($1,000,000) dollars," and they also asked for a "[r]eformation of the [p]olicy, by operation of law, to provide" for UM coverage. The plaintiffs requested damages pursuant to such coverage. Furthermore, plaintiffs made claims in the alternative against Cormack, alleging breach of contract and breach of the covenant of good faith and fair dealing.

The defendants filed answers in which they denied both coverage and liability; and, on June 3, 2010, Harleysville filed a motion for summary judgment. In its memorandum in support of its motion, Harleysville pointed out that the policy at issue did not include UM coverage; however, for purposes of its motion, it assumed that such coverage was afforded by the policy. To that end, Harleysville attached to its summary-judgment motion "a copy of the Rhode Island Uninsured Motorist Coverage Endorsement [ (UM endorsement) ] that would have been a part of the Harleysville [p]olicy had such coverage

---

7. The latter definition contained several exceptions, none of which are pertinent to this case.

8. The plaintiffs stated that "[a]t no time during his dealings with [Cormack] did [decedent] reject [UM coverage,] which was required by law to otherwise be provided with the liability coverage."

been contained in the [p]olicy."[9] The UM endorsement, under the section entitled "Coverage," states, in pertinent part, as follows: "We will pay all sums the 'insured' is legally entitled to recover as compensatory damages from the owner or driver of an 'uninsured motor vehicle' because of * * * '[b]odily injury' sustained by an 'insured' and caused by an 'accident.'" The UM endorsement goes on to explain that "[i]f the [n]amed [i]nsured is designated" as "[a] partnership, limited liability company, corporation or any other form of organization," then an "insured[ ]" is, in pertinent part, "[a]nyone 'occupying' a covered 'auto' or a temporary substitute for a covered 'auto.'"[10]

Harleysville made several arguments in its memorandum in support of its motion for summary judgment. It first argued that the van borrowed from Mr. DelSesto did not qualify as a covered vehicle under the Harleysville policy because it was borrowed by decedent, not by Allied. Harleysville further asserted that, even if the van was covered under the policy, decedent was not "using" or "occupying" it at the time of the accident; therefore, according to Harleysville, he could not have qualified as an insured at the time of the accident, under either the policy itself or under the UM endorsement.

On August 2, 2010, Cormack also filed a motion for summary judgment. In so doing, it asked "for a piggyback ride on Harleysville's motion for the reason advanced by Harleysville, that is, even if [Cormack] had obtained [UM coverage] * * *, plaintiff[s] would still not have been able to recover from the insurance company because * * * decedent would not have been insured under this policy." Because failure to request UM coverage caused decedent no damages, Cormack reasoned, any claim against it must fail.

A hearing was held on October 26, 2010. At the hearing, plaintiffs, citing *Mallane v. Holyoke Mutual Insurance Co. in Salem*, 658 A.2d 18 (R.I.1995), argued that an issue of fact existed in this case with respect to whether decedent "was a named insured * * * because he was listed as a named operator" in the policy. The plaintiffs reasoned that if decedent were to be considered a named insured, "then there need be no nexus to the * * * covered auto[ ]" at the time of the accident. Harleysville responded, first, that there was no "covered auto on this policy" because the policy covered vehicles that were "leased, hired, rented or borrowed by you, and [the] 'you' [referred to], in this case, [was] defined as the named insured." Harleysville argued that the policy was unambiguous with respect to the fact that Allied, not decedent, was the named insured. It also distinguished the commercial policy at issue in this case from the personal policy in *Mallane*. Cormack, for its part, "piggyback[ed]" on Harleysville's arguments, reiterating its claim that, even if it had procured UM coverage for decedent, he still "would not have been covered because he was not operating an insured vehicle at the time."[11]

---

9. The plaintiffs initially questioned the authenticity of the UM endorsement, stating, in their objection to Harleysville's motion for summary judgment, that the copy of the UM endorsement submitted was not "sworn or certified," nor attached to an affidavit. However, after Harleysville submitted another copy of the UM endorsement, this time along with the affidavit of Christopher Axtman, litigation specialist for Harleysville, plaintiffs did not further question the authenticity of the UM endorsement, nor the fact that such endorsement would have been a part of decedent's policy.

10. The UM endorsement defines "[o]ccupying" as "in, upon, getting in, on, out or off."

11. In responding to Cormack, plaintiffs argued that their claims against it were made in the alternative, and that even if decedent was

After hearing the parties' arguments, the trial justice stated that "[i]t seem[ed] quite apparent from the undisputed facts in this case" that the Harleysville policy "was a commercial policy" under which "decedent was not covered as a named insured." Accordingly, he granted defendants' motions for summary judgment. Orders to this effect, and judgments on those orders, were entered in November 2010, and plaintiffs appealed from them.

## II

### Standard of Review

■ "This Court reviews the grant of summary judgment on a *de novo* basis, applying the same standards as the trial court." *DuBois v. Quilitzsch*, 21 A.3d 375, 379 (R.I.2011) (quoting *Montiero v. Silver Lake I, L.P.*, 813 A.2d 978, 980 (R.I.2003)). "Summary judgment is appropriate when, viewing the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party, the court determines that there are no issues of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Id.* (quoting *Montiero*, 813 A.2d at 980). "The parties opposing summary judgment may not 'rely upon mere allegations or denials in their pleadings[;] [r]ather, by affidavits or otherwise they have an affirmative duty to set forth specific facts showing that there is a genuine issue of material fact.'" *Id.* (quoting *Montiero*, 813 A.2d at 980).

## III

### Discussion

### A

### Harleysville's Summary–Judgment Motion

■ On appeal, plaintiffs argue that summary judgment was improperly grant-

not covered, "there still [would] remain[ ] the issue of liability on behalf of [Cormack] for

ed because "[a] genuine issue of material fact [exists] as to whether [decedent was] a named insured under the [p]olicy," as he was "listed as an operator" in the policy. To support their argument, plaintiffs cite *Mallane*, 658 A.2d at 20, in which we held that "the listing of drivers' names on the declarations page, without more, gives rise to an ambiguity in respect to whether such drivers are in fact covered under the terms of the policy." According to plaintiffs, decedent, just like the plaintiff in *Mallane*, 658 A.2d at 21, had a "reasonable expectation[ ] of coverage" as a named insured because the Harleysville policy listed him as an operator.

■ "The question of whether [an individual] is covered by a given insurance policy requires judicial construction of the policy language as a matter of law." *Martinelli v. Travelers Insurance Cos.*, 687 A.2d 443, 445 (R.I.1996). "[I]t is well settled that when interpreting an insurance policy, this Court applies the same rules as those applied to the construction of contracts, and we do not depart from the literal language of the policy absent a finding that the policy is ambiguous." *Id.* "In determining whether a policy is ambiguous, we read the policy in its entirety, giving words their plain, ordinary, and usual meaning." *Id.* In so doing, "[w]e refrain from engaging in mental gymnastics or from stretching the imagination to read ambiguity into a policy where none is present." *Mallane*, 658 A.2d at 20.

We first note that the policy at issue in this case did not include UM coverage, but that defendants assumed, for purposes of their summary-judgment motions, that such coverage was contained in the policy.

not providing * * * the full span of coverages" to him.

We assume the same, without deciding whether such coverage was, indeed, provided to decedent. In so doing, however, we point out that § 27–7–2.1 requires an insurer to provide UM coverage, unless the insured rejects it.[12] We further observe our holding in *American Universal Insurance Co. v. Russell,* 490 A.2d 60, 62 (R.I.1985), that an insurer's failure to offer its insured UM coverage requires that such coverage be written into the policy by operation of law.

Having determined, for present purposes, that the Harleysville policy contained UM coverage, we look specifically to the UM endorsement that Harleysville submitted, in support of its summary-judgment motion, for the substance of that coverage.[13] We review the UM endorsement in conjunction with the policy itself, "giving words their plain, ordinary, and usual meaning." *Martinelli,* 687 A.2d at 445. In so reviewing, we observe that the Harleysville policy defined "insureds," in part, as "[y]ou for any covered 'auto'" and explained that "the words 'you' and 'your' refer to the [n]amed [i]nsured." We note further that the policy listed Allied as the "[n]amed [i]nsured." It is clear from these provisions that only Allied, as the named insured, qualified under this definition of "insureds," and that decedent, as the listed operator, did not so qualify.

Notwithstanding the policy's unambiguous language, plaintiffs assert that decedent had a reasonable expectation of coverage as a named insured because he was "listed as the only operator of the vehicles insured under the [p]olicy"; they cite *Mallane* to support their assertion. In *Mallane,* 658 A.2d at 19, we dealt with a personal automobile liability policy issued to Gregory Mallane, the "named insured," that listed Gregory's brother, the plaintiff, as a "driver." When the plaintiff sought UM coverage for personal injuries that he suffered while riding as a passenger in an uninsured vehicle, the defendant insurance company refused to pay. *Id.* The plaintiff then brought a declaratory-judgment action against the defendant, and the Superior Court held that the plaintiff was entitled to UM coverage, as he was a "named insured" because he was listed as a "driver" on the policy's declarations page. *Id.* We affirmed, stating "that the listing of drivers' names on the declarations page, without more, gives rise to an ambiguity in respect to whether such drivers are in fact covered under the terms of the policy." *Id.* at 20.

It is our opinion that the ambiguity found in *Mallane* does not exist here. First, the declarations page of the Harleysville policy clearly warned decedent that Harleysville "agree[d] to provide the insurance *as stated in this policy* " only

**12.** General Laws 1956 § 27–7–2.1(a) states, in pertinent part:

"No policy insuring against loss resulting from liability imposed by law for * * * bodily injury, or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued * * * unless coverage is provided in or supplemental to the policy, for bodily injury or death in limits set forth in each policy, * * * for the protection of persons insured under the policy who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles * * *. The in-

surer shall provide uninsured motorist coverage in an amount equal to the insured's bodily injury liability limits. The named insured shall have the option of selecting a limit in writing less than the bodily injury liability coverage, * * * but only after signing an advisory notice * * *."

**13.** On appeal, plaintiffs do not dispute the authenticity of the UM endorsement submitted by Harleysville, nor the fact that such endorsement would have been a part of decedent's policy, had such coverage been provided.

"[i]n return for the payment of the premium and *subject to all the terms of this policy.*" (Emphases added.) There is no indication that the *Mallane* policy contained such a warning. We specifically noted in *Mallane* "that reasonable expectations of coverage raised by the declaration page cannot be contradicted by the policy's boilerplate *unless the declaration page itself clearly so warns the insured.*" *Mallane,* 658 A.2d at 21 (quoting *Lehrhoff v. Aetna Casualty and Surety Co.,* 271 N.J.Super. 340, 638 A.2d 889, 892 (Ct.App. Div.1994) (emphasis added)). The declarations page of this policy clearly and unambiguously provided a warning that coverage was limited to the terms contained in the body of the policy.

It also is significant that the policy at issue in *Mallane,* 658 A.2d at 19, was a personal automobile liability policy with an individual listed as the named insured, whereas the policy at issue here was commercial and listed Allied—a corporation—as the named insured. As such, the facts of this case are more akin to the facts of *Martinelli,* 687 A.2d at 444, which also dealt with a policy that listed a corporation as the named insured. In that case, we rejected the plaintiff's assertion that the policy's definition of "you" was ambiguous, noting that the policy "clearly defined [you]" as "the [n]amed [i]nsured shown in the [d]eclarations." *Id.* at 445. We further observed that the policy "plainly listed" a corporation, not the plaintiff, as the "named insured," and we ultimately held that, "[b]ecause there was no ambiguity in the terms of the [insurance] policy, * * * [the] plaintiff was not entitled to [UM] coverage * * *." *Id.* at 445, 446; *see also Medeiros v. Anthem Casualty Insurance Group,* 796 A.2d 1078, 1080 (R.I.2002) (holding that insurance policies unambiguously listed corporation as named insured and, therefore, the decedent was not entitled to UM coverage as named insured).

We also noted in *Martinelli,* 687 A.2d at 446, that "the majority of jurisdictions that have addressed this issue have concluded that a corporate shareholder or an employee is not eligible for [UM] benefits under a policy in which the corporation is the named insured, in the event that his or her injuries were sustained outside an insured vehicle."

We are satisfied that the Harleysville policy, like the policies in *Martinelli* and *Medeiros,* was unambiguous on its face. There is no question that the policy defined "you" as the "[n]amed [i]nsured," and that it plainly listed Allied as the named insured on the declarations page. Therefore, it is clear that the policy, in covering "[y]ou for any covered 'auto,' " was referring to Allied and not to decedent. Because there was no ambiguity in the terms of the Harleysville policy, we shall not depart from the literal language of that policy, and we hold that decedent was not entitled to coverage under the policy's plain terms.

The Harleysville policy also defined "insureds" as "[a]nyone else while *using* with your permission a covered 'auto' you own, hire or borrow." (Emphasis added.) The UM endorsement similarly sets forth that "[i]f the [n]amed [i]nsured is designated" as "[a] partnership, limited liability company, corporation or any other form of organization," then an "insured[ ]" is, in pertinent part, "[a]nyone *'occupying'* a covered 'auto' or a temporary substitute for a covered 'auto.' " (Emphasis added.) The plaintiffs do not make the argument on appeal that decedent qualified under this definition. As such, we simply point to the undisputed facts in the record that decedent was not entering, exiting, or in proximity of the van at the time of the accident on March 18, 2006, nor was there any other nexus between him and the van at the time of his death. Therefore, be-

cause decedent was not "using" or "occupying" a covered automobile at the time of the accident, he did not qualify as an insured, under either the policy itself or under the UM endorsement.[14] Consequently, we are of the opinion that Harleysville's motion for summary judgment was properly granted.

## B

### Cormack's Summary–Judgment Motion

The plaintiffs also argue on appeal that the trial justice erred in granting summary judgment in favor of Cormack because, even if they "failed to establish [that] the [p]olicy provided [UM] coverage for [decedent] at the time" of his death, "they would be entitled to pursue their claims against [Cormack] for its failure to procure the coverage."[15]

■■■ We previously have recognized that once "the moving party establishes grounds for [summary] judgment, the opposing party, who counters that there is a material factual dispute, * * * must set forth specific facts that would constitute a genuine issue for resolution at trial." *Salisbury v. Stone*, 518 A.2d 1355, 1358 (R.I. 1986). This is because the "party 'opposing a motion for summary judgment has the burden of proving by competent evidence the existence of a disputed issue of material fact and cannot rest' on allegations, denials in the pleadings, conclusions, or legal opinions." *Plainfield Pike Gas & Convenience, LLC v. 1889 Plainfield Pike Realty Corp.*, 994 A.2d 54, 57 (R.I.2010) (quoting *D'Allesandro v. Tarro*, 842 A.2d

1063, 1065 (R.I.2004)). "In setting forth specific grounds to establish a factual dispute, the opposing party must present evidence of a substantial nature predicated on more than mere conclusory statements." *Salisbury*, 518 A.2d at 1358.

■■■ As we discussed *supra*, it was assumed for purposes of the summary-judgment motion that the operative policy included UM coverage. Nevertheless, we have determined that the decedent was not entitled to such coverage under the plain terms of the policy. Consequently, the plaintiffs could not have suffered any damages as a result of Cormack's alleged failure to procure a policy containing UM coverage. Moreover, we are of the opinion that the plaintiffs in this case utterly have failed to set forth evidence showing the existence of a disputed issue of material fact with respect to their claim that Cormack "breached the covenant of good faith and fair dealing." In answers to interrogatories, the plaintiffs averred that "[t]he employees, agents, and principals of Cormack[ ] * * * are the only living persons who know exactly what [the decedent] requested of them," and they added that they intended "to take the deposition[s] of these individuals." No such depositions are in the record. We hold, therefore, that Cormack's motion for summary judgment was properly granted.

## IV

### Conclusion

For the reasons stated in this opinion, we affirm the judgment of the Superior

---

**14.** Harleysville argues on appeal that the van borrowed from Mr. DelSesto did not qualify as a covered automobile under the policy because it was borrowed by decedent and not by Allied. However, in light of our holding, it is unnecessary for us to address this argument because even if the van did qualify as a covered automobile, decedent still was not insured at the time of the accident.

**15.** The two claims that plaintiffs asserted against Cormack were breach of contract and breach of the covenant of good faith and fair dealing.

Court in all respects. The record of this case shall be remanded to the Superior Court.